IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

**In re:**

| | | |
|---|---|---|
| **GREGORY B. MYERS** | * | |
| | * | Case No. 15-26033 WIL |
| Debtor. | * | Chapter 11 |
| | * | |
| _____ | * | |
| | | |
| **GREGORY B. MYERS** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Adversary Proceeding No. _____ |
| | * | |
| **OFFIT KURMAN, P.A.** | * | |
| **Attn: Maurice Offit Resident Agent** | * | |
| **8171 Maple Lawn Blvd.** | * | |
| **Suite 200** | * | |
| **Fulton, MD 20759** | * | |
| | * | |
| Serve: Offit Kurman, P.A. | * | |
| c/o: Maurice Offit, Resident Agent | * | |
| 8171 Maple Lawn Blvd. | * | |
| Suite 200 | * | |
| Fulton, MD 20759 | * | |
| _____ | * | |

**DEBTOR'S COMPLAINT TO DETERMINE PRIORTY AND EXTENT
OF LIEN OF OFFIT KURMAN P.A., OBJECTION TO PROOF
OF CLAIM NO. 14 AND NOTICE OF OBJECTION**

Gregory B. Myers ("Plaintiff" or "Debtor"), by and through his attorneys, James M. Greenan, Esq., Craig M. Palik, Esq. and McNamee, Hosea, Jernigan, Kim, Greenan & Lynch P.A., hereby files this Complaint to Determine Priority and Extent of Lien of Offit Kurman, P.A., ("Offit Kurman") Objection to Proof of Claim No. 14 ("POC"), and Notice of Objection (the "Complaint") pursuant to 11 U.S.C §§502, 506 and Rules 3003, 3007 and 7001 of the Federal

1

Rules of Bankruptcy Procedure, and for cause states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (K).

3. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4. The Plaintiff and Debtor herein is a resident of the state of Florida.

5. Defendant Offit Kurman is a close corporation formed under the laws of the state of Maryland.

## FACTS

6. On November 18, 2015 (the "Petition Date") the Debtor commenced the above referenced case under Chapter 11 of the United States Bankruptcy Code.

7. Since the Petition Date, the Debtor has continued in possession of his assets and has operated as a Debtor-in-Possession under §§ 1107 and 1108 of the Code. No committee of unsecured creditors has been appointed in this case.

8. On March 18, 2016, Offit Kurman filed its POC docketed as Claim No. 14 in the above referenced Chapter 11 case, stating the amount of the claim that is secured is $215,000.00, and stating the amount of the claim that is unsecured is $24,094.36. A copy of the POC is attached hereto as **Exhibit A**. Attached to the POC is a document entitled "ATTACHMENT TO PROOF OF CLAIM OF OFFIT KURMAN, P.A." (the "Attachment"), which states that "Offit

2

Kurman has a claim against the Debtor for outstanding fees for legal services, subject to a Credit Agreement and Promissory Note…" The Attachment further states, "Offit Kurman also has a general unsecured claim for $24,094.36."

9. On October 12, 2016, Offit Kurman filed a Limited Objection (the "Limited Objection") to Debtor's Motion to Sell Real Property Known as Lot 6, Seaside 14, Santa Rosa Beach, Florida 32459 ("Lot 6") Pursuant to 11 U.S.C. §363(b) and (f) (the "Sale Motion") where, for the first time, Offit Kurman asserted a secured claim against Lot 6 in the increased amount of $550,000.00.

10. On October 13, 2016, Offit Kurman filed an Amended Limited Objection (the "Amended Limited Objection") to Debtor's Motion to Sell Real Property Known as Lot 6, Seaside 14, Santa Rosa Beach, Florida 32459 Pursuant to 11 U.S.C. §363(b) and (f) (the "Sale Motion"), reiterating its assertion of a $550,000.00 secured claim. A copy of the Amended Limited Objection is attached hereto as **Exhibit B**.

11. On October 18, 2016, Offit Kurman filed an amended POC (the "Amended POC") wherein it asserted the following claims: a $550,000.00 secured claim against Lot 6, an unsecured claim against Debtor individually for $23,605.96 and a joint unsecured claim against Debtor and his non-filing spouse, Barbara Ann Kelly ("Kelly") in the amount of $185,116.27. A copy of the Amended POC is attached hereto as **Exhibit C**.

12. In support of its Amended POC, Offit Kurman attached (a) a Supplement containing various calculations of debt identified in the preceding paragraph; (b) a Credit Agreement dated December 13, 2013 between Kelly and itself concerning the provision of future legal services to be performed by Offit Kurman in connection with four (4) separate legal actions

identified in the Credit Agreement, which Credit Agreement was acknowledged by the Debtor for the limited purpose of granting a mortgage; (c) a mortgage recorded January 13, 2014 in the Walton County Official Records at BK 2940, Page 1825 (the "Mortgage"), mortgaging real property in Walton County, Florida identified as "Lot 3 of TOWN CENTER 30-A EAST" ("Lot 3"), and Lot 6, "**up to a maximum amount of Five Hundred Fifty Thousand and No/100 Dollars ($550,000.00)**" (emphasis in original); and (d) a Partial Release of Mortgage executed by Miller John Poppleton, Esq. for Offit Kurman..

13. The only written agreement the Debtor has with Offit Kurman for the payment of attorneys' fees is a "Promissory Note and Agreement" dated November 6, 2012, with a face amount of $46,238.00 (the "Promissory Note and Agreement"). Debtor is not in default under the Promissory Note and Agreement. The Promissory Note and Agreement specifically provides, "**So long as Gregory B. Myers timely makes his payments as set forth herein, Offit Kurman, P.A. shall forebear from proceeding against Gregory B. Myers for any other funds that the firm claims are owed by Gregory B. Myers with the understanding that all claims against Gregory B. Myers shall be released as set forth herein once the full amount owed as set forth herein has been timely paid**." A copy of the Promissory Note and Agreement is attached hereto as **Exhibit D**.

14. As of the Petition Date The Debtor had timely made all payments under the Promissory Note and Agreement.

15. The Promissory Note and Agreement contains at p. 3 an integration clause stating, "This Note contains the entire agreement of the parties with respect to the settlement hereby effected, and no other agreement, statement or promise made by any party hereto, or any

4

employee, officer, attorney, agent or other representative of any party hereto, shall be valid or binding.  The Promissory Note and Agreement also contains at p. 3 a requirement that any modification of the Note be in writing "No modification of any provision of this Note shall be effective unless the same is in writing and signed by all parties, and then such modification shall be effective only in the specific instance or for the purpose for which given."

16. Lot 3 was sold in the summer of 2014 and Offit Kuman was paid $335,000.00 from the sale proceeds towards the Mortgage, leaving a remaining Mortgage balance of $215,000.00 (the amount of the claim that Offit Kurman initially asserted is secured in its POC).  A copy of the HUD-1 Settlement Statement and a copy of the PARTIAL RELEASE OF MORTGAGE (the "Release") executed by Timothy C. Lynch, Esq. for Offit Kurman is attached hereto as **Exhibits E and F**, respectively.

17. The Credit Agreement required Offit Kurman to prosecute the four (4) separate legal actions to their ultimate conclusion, including, without limitation, filing all possible appeals, as more specifically set forth in the Credit Agreement.

18. The Credit Agreement initially required that Lot 6 be listed for sale by not later than January 20, 2014 at a list price of no more than $1,995,000.00, unless otherwise agreed by Offit Kurman.

19. Subsequent to the parties' execution of the Credit Agreement, an agreement was reached extending the deadline to list Lot 6 to a date beyond January 20, 2014.  This is evidenced in, *inter alia*, e-mail communications between Offit Kurman and Debtor dated August 12, 2014 concerning the need to have further discussions "regarding when to list Lot 6," and on December 14, 2014, concerning Offit Kurman's acknowledgement and agreement regarding the initial

5

listing price for Lot 6 at $2.995M stating "that way you can drop the price next year if the property is not moving" (at the time when it was first listed), which listing price was thereafter reduced to $1.995M, and thereafter again reduced to $1.895M (the current listing price).

20. On Friday, September 11, 2015, the Debtor met with Aaron Bukowitz ("Mr. Bukowitz"), Chief Operating Officer of Offit Kurman. At that meeting, Mr. Bukowitz provided Debtor with a copy of an outline (the "Outline") Mr. Bukowitz had prepared for the meeting. The Outline, *inter alia*, evidences Offit Kurman's belief that as of September 11, 2015, that there was "$215,000 Remaining security under the agreement" as follows:

> **Greg Myer's Note Reconciliation**
> $550,000 Credit Agreement Security
> $335,000 Payment in July 2014 from sale (Lot 3)
> $215,000 Remaining security under the agreement

The pertinent part of the Outline acknowledging a remaining secured claim of $215,000.00 is attached hereto as **Exhibit G**.

21. On September 24, 2015, Mr. Bukowitz sent a letter to Kelly alleging that Kelly breached the Credit Agreement by (a) not listing Lot 6 for sale by January 20, 2014, and (b) listing Lot 6 for a price in excess of $1.995 million (the "September 24, 2015 Letter"). The September 24, 2015 Letter advised Kelly that Offit Kurman was going to discontinue the provision of legal services in connection with the various cases as set forth in the Credit Agreement. The September 24, 2015 Letter was not addressed to Debtor, nor was the Debtor copied on the September 24, 2015 Letter. A copy of the September 24, 2015 letter is attached as **Exhibit H**.

22. Debtor objects to Offit Kurman's POC and seeks a determination of the Court that

Offit Kurman's alleged secured claim is unsecured, that Offit Kurman has no lien against Lot 6, and that the sole unsecured obligation of the Debtor to Offit Kurman is limited to an amount not greater than $20,482.00 based upon payments made by the Debtor that have not been properly credited.

## COUNT I
### (Objection to Scheduled Claim and Determination of Secured Status
### 11 U.S.C §502, 11 U.S.C §506, Fed.R.Bank.P. 3007)

23. Plaintiff incorporates by reference the allegations contained in paragraphs 1-22 of the Complaint.

24. Offit Kurman, not Kelly or the Debtor, breached the Credit Agreement when it failed and refused to honor its obligations under the Credit Agreement to diligently prosecute the four (4) separate legal actions set forth in the Credit Agreement to their ultimate conclusion, including without limitation filing all possible appeals, and without just cause, discontinuing the provision of legal services and prematurely withdrawing its representation.

25. Kelly and the Debtor's granting of the Mortgage to Offit Kurman was premised on Offit Kurman diligently prosecuting the four (4) separate legal actions set forth in the Credit Agreement to their ultimate conclusion, including without limitation filing all possible appeals, which Offit Kurman refused to do by breaching the Credit Agreement and discontinuing the provision of legal services and prematurely withdrawing its representation.

26. Offit Kurman's breach of the Credit Agreement, discontinuation of the provision of legal services and premature withdrawal of its representation denied Kelly and the Debtor the benefit of their bargain such that Offit Kurman is not entitled to a payment of the remaining balance under the Mortgage of $215,000.00, or otherwise, against any property owned by Kelly

7

or the Debtor.

27.     Offit Kurman's breach of the Credit Agreement, discontinuation of the provision of legal services and premature withdrawal of its representation denied Kelly and the Debtor the benefit of their bargain such that the Mortgage is voidable.

28.     The maximum remaining secured claim of Offit Kurman with respect to the Mortgage, notwithstanding its breach of the Credit Agreement, is $215,000.00 based upon its prior receipt of $335,000.00 from the sale of Lot 3, not $550,000.00 as alleged in the Amended POC.

29.     Both the Debtor and Kelly have incurred damages that equal or exceed the amount claimed by Offit Kurman in its Amended POC, to which the Debtor and Kelly are entitled, at minimum, to a complete offset and/or recoupment against such Amended POC.

30.     Offit Kurman's alleged unsecured claim against the Debtor in the amount of $23,605.96 is overstated and fails to reflect all payments made by the Debtor.  Offit Kurman's unsecured claim is limited to an amount not greater than $20,482.00 based upon payments made by the Debtor.

31.     No agreement exists between the Debtor and Offit Kurman for the joint unsecured claims asserted against Debtor and Kelly in its Amended POC.

**WHEREFORE,** Gregory B. Myers, Plaintiff, respectfully requests that this Honorable Court Order that his objection to Offit Kurman, P.A.'s, Proof of Claim be sustained; and that as a result of Offit Kurman, P.A.'s breach of its obligations under the Credit Agreement that its claim be disallowed in its entirety, and for such other and further relief as this action may require.

**NOTICE TO OFFIT KURMAN, P.A., CLAIMANT**

Please take notice that:

**WITHIN 30 DAYS AFTER THE DATE OF SERVICE OF THE OBJECTION, THE CLAIMANT MAY FILE AND SERVE A MEMORANDUM IN OPPOSITION, TOGETHER WITH ANY DOCUMENTS AND OTHER EVIDENCE THE CLAIMANT WISHES TO ATTACH IN SUPPORT OF ITS CLAIM, UNLESS THE CLAIMANT WISHES TO RELY SOLELY UPON THE PROOF OF CLAIM. AN INTERESTED PARTY MAY REQUEST A HEARING THAT WILL BE HELD IN THE COURT'S DISCRETION.**

Respectfully submitted,

McNAMEE, HOSEA, JERNIGAN, KIM, GREENAN & LYNCH, P.A.

/s/ Craig M. Palik, Esq.
_____
James M. Greenan, Esq. (08623)
Craig M. Palik. Esq. (15254)
6411 Ivy Lane, Suite 200
Greenbelt, Maryland  20770
(301) 441-2420
(301) 982-9450 (f)
jgreenan@mhjlawyers.com
cpalik@mhlawyers.com

*Attorneys for Gregory B. Myers, Debtor*